IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY LAMBERT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10-cv-0571 ) ) Judge Robert M. Dow, Jr. |
| HUGHES NETWORK SYSTEMS, LLC., | ) ) |
| Defendant | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Gregory Lambert's motion to remand [28] this case to the Circuit Court of Cook County. For the reasons stated below, the Court grants Plaintiff's motion.

**I.   Background**

Plaintiff Gregory Lambert's complaint arises out of a subscriber agreement under which Defendant Hughes Network Systems, LLC[1] ("Hughes") provided satellite internet service to Plaintiff. Compl. ¶ 16. Plaintiff alleges that he wanted to terminate his service in 2006, but continued paying for the service through the end of his contract term to avoid paying an early termination fee ("ETF") of approximately $300-$400. Plaintiff seeks to represent a class of "hundreds of thousands" of Hughes' customers in an action challenging the enforceability of Hughes' ETFs. Pursuant to his written subscription agreement with Hughes, Plaintiff agreed to arbitrate any disputes and also waived the right to bring a class action. Plaintiff filed this case in the Circuit Court of Cook County, Illinois. Plaintiff's complaint seeks a declaratory judgment that (1) the clause in Hughes' subscriber agreement that prohibits class arbitration is

---

[1] The original complaint also named Hughes Communications, Inc. ("HCI") and HughesNet, Inc. as defendants in this action. After Plaintiff filed his motion to remand, he voluntarily dismissed HCI from this action. Defendant maintains, and Plaintiff has accepted as true for purposes of this motion, that HughesNet, Inc. is a trade name used by Hughes and is not a legal entity capable of being sued.

unconscionable and unenforceable and (2) orders the parties to class arbitration before the American Arbitration Association. Plaintiff views this "as a necessary first step toward obtaining class-wide relief from Hughes' ETF." Id. at ¶ 38. Hughes timely removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441; Plaintiff now seeks a remand to state court.

## II. Analysis

The exercise of federal subject matter jurisdiction on the basis of diversity requires complete diversity of citizenship among the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.[2] See 28 U.S.C. § 1332(a)(1); *LM Ins. Corp. v. Spaulding Enters. Inc.,* 533 F.3d 542, 547 (7th Cir. 2008); *Rubel v. Pfizer Inc.,* 361 F.3d 1016, 1017 (7th Cir. 2004). Here, the parties do not dispute that complete diversity of citizenship exists; therefore, the sole issue is whether the jurisdictional amount in controversy is satisfied.

The amount in controversy in a case is determined by evaluating the claims described in the complaint, along with the record as a whole, at the time that the case was removed. See *Andrews v. E.I. Du Pont De Nemours & Co.,* 447 F.3d 510, 514-15 (7th Cir. 2006); *Geschke v. Air Force Ass'n,* 425 F.3d 337, 341 (7th Cir. 2005). The party asserting the existence of federal subject matter jurisdiction has the burden of affirmatively establishing that the jurisdictional minimum amount is satisfied. See *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 540 (7th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447 (7th Cir. 2005). A removing defendant "need not show that the plaintiff will prevail or collect more than $75,000 if

---

[2] Both parties agree, perhaps begrudgingly on Defendant's part (although it is Defendant's own contract provision requiring arbitration that would keep any potential class action out of federal court), that this case is not subject to the Class Action Fairness Act ("CAFA"). See Notice of Removal at ¶ 30; Motion to Remand at 7 n.4. In any event, the evidence put forth by Defendant goes to satisfying the jurisdictional requirements in non-CAFA cases – complete diversity of citizenship among the parties and an amount in excess of $75,000.

he does." *Rising-Moore v. Red Roof Inns, Inc.,* 435 F.3d 813, 816 (7th Cir. 2006). Rather, the defendant must show that "what the plaintiff hopes to get out of the litigation" exceeds the jurisdictional amount. *Id.*; see also *Brill,* 427 F.3d at 449 ("The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks."). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Brill*, 427 F.3d at 448-49 (7th Cir. 2005); see also *Meridian,* 441 F.3d at 543.

In an action seeking declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977). In other words, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, "the appropriate focus is the stakes of the underlying arbitration dispute." *America's MoneyLine, Inc. v. Coleman,* 360 F.3d 782, 786 (7th Cir. 2004). That value may be measured by "what the plaintiff hopes to get out of the litigation." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815-16 (7th Cir. 2006); see also *America's MoneyLine,* 360 F.3d at 786 (value of the litigation is measured by "the pecuniary result that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment"). Additionally, "it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the request relief – the so-called 'either viewpoint' rule." *Uhl v. Thoroughbred Tech. and Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (finding that the cost to a defendant of complying with an injunction sought by a plaintiff may properly be considered in determining the amount in controversy). The Seventh Circuit, applying the either viewpoint rule in a class action, identified

three situations in which the cost of equitable relief to a defendant might satisfy the jurisdictional minimum: (1) where the requested relief would require some alteration in the defendant's business practices that would cost more than the jurisdictional minimum amount; (2) where the requested relief would force the defendant to forgo a benefit that is worth more than the jurisdictional minimum amount; or (3) where the requested relief would entail clerical or ministerial costs of compliance greater than the jurisdictional minimum amount. See *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609-10 (7th Cir. 1997).

Here, the relief sought by Plaintiff's complaint is limited: a court declaration that the class waiver language in Hughes' contract is unenforceable because it violates the Illinois Supreme Court's decision in *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1 (2006). But as Defendant points out, Plaintiff's complaint leaves little doubt that Plaintiff will file and litigate a class arbitration against Hughes if a court grants the declaratory relief requested. See Compl. ¶ 38 ("This lawsuit is a * * * first step toward obtaining class-wide relief from Hughes' ETF."). Thus, Defendant urges the Court to assess the pecuniary result that would flow from the declaratory judgment, not merely the declaratory judgment alone. Put another way, Defendant asks us to look beyond the amount sought or recovered in this case to the value of the consequences that may result from how a court resolves the enforceability of the waiver clause.

Using the "either viewpoint" rule, Defendant first argues that one measure of the costs of Plaintiff's requested relief is the increased cost to Defendant of arbitrating Plaintiff's claims as a nationwide class action. According to Defendant, the additional costs associated with defending a class action would include "the costs of identifying and compiling account, payment and customer service records for 'hundreds of thousands' of class members, including both current and former subscribers." Defendant maintains that researching individual account histories is a

"complex undertaking" that would require approximately thirty minutes of employee time per account. The total cost to Hughes of such employee time is approximately $50 per hour, or about $25 per subscriber. Defendant goes on to set forth the costs for both a nationwide class and an Illinois-only class, both of which easily exceed the $75,000 threshold. See, *e.g.*, Notice of Removal at 6-7.

Defendant then makes additional arguments as to how the amount-in-controversy requirement has been met (including arguments regarding the damages that Plaintiff seeks as well as arguments related to the costs to Hughes in complying with a potential order invalidating the ETF provisions). However, each argument, like the first, ignores the "nonaggregation rule that still applies to class actions where the named plaintiff's claim does not satisfy the jurisdictional amount." *Uhl*, 309 F.3d at 983. The rule posits that the claims of the members of a class in a diversity class action may not be aggregated to meet the minimum jurisdictional amount. See *Snyder v. Harris*, 394 U.S. 332, 338 (1969). Because Defendant asks the Court to look beyond this single plaintiff/single defendant declaratory judgment action – to the value of the consequences that may result if a court finds the waiver clause unenforceable – the Court must also consider the nonaggregation rule as it would apply to this potential class.

Courts have acknowledged that if the amount in controversy is considered from a defendant's viewpoint, this rule of nonaggregation may be circumvented. For instance, although the claims of each class member might be less than the jurisdictional amount (clearly the case here), they usually will exceed that amount from the defendant's viewpoint (also clearly the case here). The Third Circuit, in rejecting the "defendant's viewpoint" test in the context of class actions, has held that allowing the amount in controversy in a class action suit to be measured by the defendant's cost would eviscerate the Supreme Court's holding that the claims of class

members may not be aggregated in order to meet the jurisdiction threshold. See *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 (3d Cir. 1993).

In light of these concerns, courts that employ the "either viewpoint" test have recognized significant limitations that restrict its utility for parties trying to satisfy the amount in controversy for diversity purposes. For instance, a defendant cannot bundle into the cost of equitable relief the value of illegal profits from the conduct complained of in a case. In *Brand Name*, the Seventh Circuit explained that "while an injunction against price fixing might prevent a defendant from engaging in lucrative unlawful transactions, it would not deprive the defendant of a *legally protected* interest." 123 F.3d at 610 (emphasis in original). In other words, "an injunction * * * [that] merely tells [the defendant] to stop doing something illegal, such as conspiring to fix prices," does not satisfy the jurisdictional amount under the either viewpoint rule, even if that order has substantial monetary ramifications. *Id.* Even more importantly for present purposes, the either viewpoint rule must be construed in a manner consistent with the general rule against aggregation of claims. The *Brand Name* court held, "Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated." *Id.* "The test, we repeat, is the cost to each defendant of an injunction running in favor of one plaintiff; otherwise the nonaggregation rule would be violated." *Id.*

Similarly, in *Uhl v. Thoroughbred Technology & Telecommunications,* 309 F.3d 978 (7th Cir. 2002), the court acknowledged that "it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief" and that "the cost to a defendant of complying with an injunction sought by the plaintiff

6

may properly be considered in determining the amount in controversy." *Id.* at 983. However, the *Uhl* court stated further that it can be "difficult to make this assessment in the class action context," and that the Seventh Circuit has chosen to resolve such difficulty "by looking separately at each named plaintiff's claim and the cost to the defendant of complying with an injunction directed to that plaintiff." *Id.* (citing *Brand Name,* 123 F.3d at 610). "In our view, that ensures that we are not undermining the nonaggregation rule that still applies to class actions where the named plaintiff's claim does not satisfy the jurisdictional amount." *Id.*; see also *Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 977 (7th Cir. 2000).

In sum, even where courts use the "either viewpoint" rule to value the amount in controversy in a class action, the Seventh Circuit teaches that the cost of equitable relief to a defendant nonetheless must be apportioned *pro rata* among the members of the proposed class. See *Hernandez v. American Family Mut. Ins. Co.,* 2000 WL 1863367, at *2 (S.D. Ill. Dec. 14, 2000) ("[T]he amount in controversy from a defendant's point of view is the amount the defendant risks paying the named plaintiff, not the amount the defendant may have to pay the entire class."); *Littleton v. Shelter Ins. Co.,* 2000 WL 356408, at *2 (S.D. Ill. Mar. 9, 2000) (holding that the defendant's claimed cost of complying with the requested injunctive relief of $802,755, when divided by the approximately 541,947 members of the proposed class, yielded a pro rata cost to the defendant of injunctive relief in favor of the named plaintiff and each of the absent class members of about $1.50, far less than the jurisdictional requirement); *Nicholson v. Marine Corps W. Fed. Credit Union,* 953 F.Supp. 1012, 1017 n. 3 (N.D. Ill. 1997) (quoting *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1050 (3d Cir.1993)) (holding that "[i]n a diversity-based class action seeking primarily money damages * * * allowing the amount in controversy to be measured by the defendant's cost would eviscerate [the rule] that the claims of

class members may not be aggregated in order to meet the jurisdictional threshold" unless "the court * * * examine[s] the value of the injunctive relief to individual plaintiffs rather than the overall cost to the defendants."); see also *Melnick v. Microsoft Corp.,* 2000 WL 761013, at *1 n. 1 (D. Me. Mar. 8, 2000) (citing *Brand Name,* 123 F.3d at 609-10) (finding that "if the defendant's cost is considered [in evaluating the amount in controversy in a proposed class action], it must then essentially be divided by the number of potential plaintiffs").

Defendant has the burden of putting forward competent evidence showing by a preponderance of the evidence that the amount in controversy is satisfied. See *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 541-42 (7th Cir. 2006). Even focusing on the stakes of the underlying arbitration dispute and applying the "either viewpoint" rule, Defendant has failed to demonstrate that at least one of the "potential" named plaintiffs has a jurisdictionally-sufficient claim. See *In re Brand Name,* 123 F.3d at 607 (explaining that, in evaluating the amount in controversy in a class action, "[t]he court cannot just add up the damages sought by each member of the class."). While Defendant has put forth evidence that the amount in controversy exceeds $75,000, in each instance Defendant aggregated the claims of the potential plaintiffs, or failed to divide its cost by the number of potential plaintiffs. Even assuming that the relief sought by the proposed class, if granted, would cost Defendant an amount geometrically larger than $75,000, it is apparent that the cost of the relief, apportioned *pro rata* among the named Plaintiff and members of the proposed class, would not satisfy the amount in controversy, given the small actual damages at issue and the size of the proposed class.

### III. Conclusion

For these reasons, the Court grants Plaintiff's motion to remand.

Dated: August 2, 2010  _____
Robert M. Dow, Jr.
United States District Judge